McFarland, J.,
delivered the opinion of the Court.
This suit is upon a note executed by the defendant to the plaintiff: There was a plea of a want of consideration, which was found in favor of the defendant, and judgment rendered accordingly. The plaintiff appealed in error. In May, 1860, the plaintiff obtained judgment before a Justice of the Peace, against the firm of Hansell & Biggs, and the defendant Folwell became surety for stay of execution. *93 In February, 1861, bis property was levied upon under an execution issued on this judgment, and Fol-well having been advised by bis attorney that he was legally bound as stayoi’, and.not knowing of any defence, for the purpose of obtaining time, executed the note upon which this suit was brought, being for the principal and interest of the Justice’s judgment. It was proven by Hansell, one of the firm of Hansell & Riggs, that sometime between the months of June and August, 1861, he procured one Busford, to discount some notes that Hansell & Riggs held upon the firm of Jones, Brown & Co., for the purpose of obtaining funds to pay the judgment above referred to, and another judgment between the same parties for which Folwell was also bound. He obtained from Bus-ford a check, and upon this he received from a bank, Tennessee bank-notes, and at once paid the same to Frank Byrd, a constable in Memphis, who then held an execution on the judgment mentioned; that he paid the same in full and took Byrd’s receipt in full, which was afterward lost by the burning of his house. To rebut this, the plaintiff was examined as a witness, and proved among other things, that he never received any payment from Byrd or anyone else, nor was anyone authorized to receive payment from Byrd.
There was no proof in regard to whether Tennessee bank-notes, at the time of this transaction, were current, except what may be inferred from the fact that they were received from a bank. The charge of the Court simply was, that if Hansell had paid the judgment to Byrd, a constable with an *94 execution in bis hands, and the defendant afterward in ignorance of the fact, gave the note sued upon, for the. same judgment, he would not be bound thereby, and they would find for the defendant. The plaintiff requested the court to instruct the jury that if the payment was made to Byrd in Tennessee banknotes, and that the defendant did not receive the same or its equivalent from Byrd, or accept or assent to the payment, he would not be bound thereby. This instruction was refused.
In the case of Crutchfield v. Robins, 5 Hump., 15, it was held that a payment of a judgment to a clerk in current convertible bank paper, was a good payment, in the absence of any notice by the creditor that he would require gold. The authority of this case has been generally admitted by this court in subsequent cases.
It is argued in this case, that between June and August, 1861, the date of this transaction, Tennessee bank-notes were not such current convertible paper as the constable was authorized to receive as money, and the court' below should have instructed the jury as to what would constitute a good payment to the constable, and that payment in a depreciated bank paper was not a good payment. As we have seen there was no proof as to whether Tennessee bank-notes were current or not, or as to their value. The court was asked to tell the jury that a payment in Tennessee bank-notes was not a good payment unless the same were received, or the payment assented to by the plaintiff. This, as a matter of law, the *95 Court probably could not tell the jury. It is argued that the court 'will take judicial knowledge of the fact, that bank-notes, in 1861, were not current and convertible into gold, and for this, the case of Wood v. Cooper, 2 Heis., 441 is referred to. In that case, Judge Nelson said: “The court may judicially know any matter of public history affecting the whole people, and whatever ought to be generally known within the limits of their jurisdiction,” and adds, “that it is generally, perhaps universally, known that during the late civil war, gold and silver disappeared as a circulating medium in the Southern States, and became the subject of a special contract in the very few instances in which contracts were made as to that species of currency.”
. While it may be true, that the court may judicially know that bank-notes were not at that date convertible into gold or silver, because gold and silver had retired from circulation, yet, the court cannot know that bank-notes of this description were not current and readily passed in all transactions,, and were not received as the currency in circulation. This court has recently held, in one or more cases, not yet reported, that where a plaintiff in a judgment caused an execution to be issued and placed in the hands of a constable, at a time when it was well-known that the Confederate Treasury notes constituted the entire circulating medium of the country, and gave no special instructions against receiving the same, .that this was equivalent to an implied authority to receive Confederate money, and a payment so made was *96 good. And it will be perhaps found that the true principle, settled by the case of Crutchfield v. Robbins, et als., is not so much that banknotes are money in a legal sense, and as such strictly receivable as a payment of judgements under the constitution and laws, but that when they are current and received as money, unless the creditor gave special notice that he required gold or silver, it will be taken as implied authority from him to receive the ordinary circulating medium of the country.
It has never been held that bank-notes of any description were money, in such a sense that the creditor was compelled to receive them in payment of his debt. The principle upon which alone an officer may receive bank-notes in payment, is because such banknotes are so universally current, and pass so generally as money, that gold and silver are never paid or required except when special notice is given, and then when the creditor fails to give notice that gold or silver is required, the officer may take this as an implied waiver of his right to exact gold or silver, and as implied authority to receive that currency which then universally circulates in the place of money.
The proof here is, simply, that the execution was paid to the constable. How paid? In Tennessee bank-notes. Were these Tennessee bank-notes, at that date, current and generally received in the place of money ? We do not say, that upon the authorities referred to and the state of facts then existing, it was essential to show that they were convertible into gold *97 or silver, but it should appear that these bank-notes were generally circulating in the place of gold and silver.
If it be conceded that the court will take judicial ' knowledge that gold and silver had retired from circulation, the court cannot judicially know that Tennessee bank-notes, or any particular note, had taken its place. It has been frequently held that the law presumes in the absence of proof to the contrary, that current bank-notes were of par value with gold, but we think it would be going too far to hold that the court will take judicial knowledge as to what bank-notes are current, or as to their value. This has always been held a matter of proof.
To determine- the question, whether in this case the payment of the bank-notes to the constable was a valid payment, it was important to inquire whether they came within that description of currency before described. The burthen was upon the party asserting the payment, to prove this. The law did not presume it. The court should so have instructed the jury. The jury should have been instructed as to what would, or would not, constitute a valid payment. The lawful money then was gold or silver, the creditor was entitled to this, if demanded. Nothing else would constitute a valid payment. The party asserting that payment in a different manner, should be held to prove that the bank-notes were current and passing as money.
For this the judgment must be reversed.